UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
UNITED STATES OF AMERICA          :          Docket#
                                  :          02-CR-606
                                  :
    - versus -                    :          U.S. Courthouse
                                  :          Brooklyn, New York
                                  :
PETER GOTTI, et al.,              :
                Defendant         :          July 10, 2002
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION
BEFORE THE HONORABLE FREDERIC BLOCK
UNITED STATES DISTRICT JUDGE

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ OCT 2 2008 ★

BROOKLYN OFFICE

A   P   P   E   A   R   A   N   C   E   S:

For the Government:         **Alan Vinegrad, Esq.**
                            United States Attorney

                    BY:     **Andrew Genser, Esq.**
                            **Rick Whalen, Esq.**
                            Assistant U.S. Attorney
                            225 Cadman Plaza East
                            Brooklyn, New York  11201


For the Defendant:          **Dominick Porco, Esq.**


Official Transcriber:       **Rosalie Lombardi**


Transcription Service:      **Transcription Plus II**
                            823 Whittier Avenue
                            New Hyde Park, N.Y.  11040
                            (516) 358-7352


        Typist:             **Linda Ferrara**




Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Transcription Plus II          Rosalie Lombardi

Proceedings                    2

1        THE CLERK:  This is Criminal Cause for

2   a Bail Application, United States of America

3   v. Primo Cassarino.

4        Counsel, please state your name for

5   the record.  You may have to step forward

6   because we're recording.

7        MR. GENSER:  Andrew Genser for the

8   United States.

9        Good afternoon, your Honor.

10       THE COURT:  Good afternoon.

11       MR. WHALEN:  Rick Whalen for the

12  government.

13       MR. PORCO:  Dominick Porco, for the

14  defendant.

15       Good afternoon, your Honor.

16       THE COURT:  All right.

17       And we have pretrial services here, I

18  believe.

19       MS. VASQUEZ:  Pretrial Services

20  Officer Lourdes Vasquez.

21       THE COURT:  I'm sorry?

22       MS. VASQUEZ:  Lourdes Vasquez.

23       THE COURT:  Ms. Vasquez, nice to see

24  you here.

25       Let me just start by telling you what

1   I have in my file that's been presented to me.

2   I have Mr. Porco's letter of June 28 that runs

3   ten pages and I have the government's response

4   of July 9, which runs 34 pages.  We don't

5   necessarily make our determinations based on

6   numerosity of the pages.

7            MR. GENSER:  Mine is double-spaced,

8   your Honor.

9            MR. PORCO:  Thank God for that.

10           THE COURT:  And we have a number of

11  exhibits attached to Mr. Genser's submission.

12  I assume, Mr. Porco, you've seen all that.

13           THE DEFENDANT:  I have.

14           THE COURT:  I have the initial

15  pretrial services report which is dated June 4

16  and Ms. Vasquez, on behalf of pretrial

17  services makes the following recommendation.

18           Solely in regard to the risks of

19  non-appearance, pretrial services would

20  recommend that this defendant's release be

21  contingent upon a substantial bond and then

22  she goes on to talk about that it should be

23  properly secured.

24           It concludes by saying that if the

25  government can show through clear and

Proceedings                                    4

1    convincing evidence that the defendant poses a

2    serious risk of danger, other more restrictive

3    conditions, including possibly detention may

4    be necessary.  So, the focus by Ms. Vasquez is

5    in regard to the risks of flight.

6              And then I have handed to me just

7    literally seconds ago, an addendum by

8    Ms. Vasquez dated July 10 and the addendum

9    expresses its satisfaction with the suretors

10   and concludes by saying based on the above, it

11   is pretrial services recommendation that the

12   above noted individuals appear to be suitable

13   sureties.  We reaffirm our recommendation for

14   defendant's release on a substantial secured

15   bond co-signed by responsible gainfully

16   employed sureties.

17             However, we reassert that if the

18   government can show clear and convincing

19   evidence that the defendant poses a risk -- a

20   serious risk of danger, other more restrictive

21   conditions including detention may be

22   necessary.

23             So, my sense is that pretrial services

24   is not concerned, based upon the strength of

25   the proposed sureties about a risk of flight.

1   And I guess that's the government's position,

2   as well.

3            Am I reading you correctly,

4   Mr. Genser, since you focus on the risks of

5   danger to the community.

6            MR. GENSER:  Well, we think that there

7   clearly is a risk of flight which in all

8   likelihood could be addressed if that were the

9   only issue through a very substantial bond and

10  release conditions.

11           THE COURT:  Well, could, would, should

12  but you're focus is on the risk of danger to

13  the community.

14           MR. GENSER:  Absolutely, Judge.

15  That's the focus.

16           THE COURT:  Yes, I think that the

17  proposed sureties here satisfy the risk of

18  flight scenario and the standard there, if I

19  recall correctly, is just one of -- not of

20  clear and convincing but simply of the

21  preponderance of the evidence.

22           So, I really don't think there's a

23  question here of risk of flight in light of

24  the proposed sureties.  The concern here is on

25  the danger to the community and I'm going to

1   focus on that.

2            MR. GENSER:  And the risk of

3   obstruction, your Honor.

4            THE COURT:  Well, that seems to be

5   part and parcel of the danger to the

6   community.

7            MR. GENSER:  Yes.

8            THE COURT:  So, Mr. Porco --

9            MR. PORCO:  Yes, Judge.

10           THE COURT:  -- the real problem I have

11   here, which I am sure you anticipate, is we

12   have here hard evidence, unlike many of these

13   bail application scenarios, with your client

14   being on tape visiting a host of threats or

15   intimidating comments and arguably some of

16   them can be construed as a desire to obstruct

17   justice.  And in the face of that, how can I

18   really be comfortable that he should be

19   released?

20           MR. PORCO:  Yes, it is the fundamental

21   issue before the Court on this bail

22   application, a feeling that the Court -- a

23   comfort level that the Court needs to reach

24   that it's doing the right thing in releasing

25   this defendant and that it is not exposing

Proceedings                           7

1    anyone to danger.

2         And it was my hope that through the

3    submissions that I sent to the Court, as well

4    as through some of the government's

5    submissions, as well, that the Court would

6    come to the same conclusion that apparently

7    pretrial services has now twice.

8         THE COURT:  Well, pretrial services

9    has not come to the conclusion which you

10   suggest.  As I read pretrial services

11   recommendations, they focus on the risk of

12   flight and they point out very succinctly that

13   if the Court were to conclude that there's a

14   danger to the community, that detention might

15   be warranted.

16        Am I reading you correctly?

17        MR. PORCO:  Well, they --

18        THE COURT:  All right.

19        MR. PORCO:  Except that they also

20   indicate that if the Court concludes -- and

21   again, they're doing their job well.  They're

22   leaving that determination to the Court.

23   They're not taking a position as to whether or

24   not the defendant is a danger or not.

25        THE COURT:  Well, let me interrupt.

Proceedings 8

1   Pretrial services is here.  I want to give

2   Ms. Vasquez her money's worth.  She can speak

3   for herself.

4   　　　　MR. PORCO:  Yes.

5   　　　　THE COURT:  Would you like to add

6   anything?

7   　　　　MS. VASQUEZ:  No, your Honor, I think

8   my addendum addresses the issues.

9   　　　　MR. PORCO:  But there is a line,

10  your Honor -- there is a line in the

11  concluding paragraph that I think is -- ought

12  to be the focus here, which was not in the

13  Court below.

14  　　　　And that is whether or not beyond mere

15  execution of a substantially secured bond,

16  whether there are more restrictive conditions,

17  including detention; detention being one of

18  the options.

19  　　　　It seems to me, your Honor, that thus

20  far, the only option that has been considered

21  here, the only option that has been discussed,

22  has been detention.

23  　　　　There are other factors here and the

24  biggest difficulty that I've had with the case

25  thus far is that no one has suggested

Transcription Plus II　　　　Rosalie Lombardi

Proceedings                                    9

1    anything, has pointed to any concrete fact

2    beyond the four corners of the indictment.

3              I would like to invite the Court's

4    attention to page 29 of the government's

5    submission to you.

6              THE COURT:  All right.

7              MR. PORCO:  In the middle of the page

8    under paragraph 3, which by the way, paragraph

9    3 is -- addresses the issue I just identified,

10   are there any conditions that can assure the

11   safety of the community.  They say no, there

12   are not.

13             And in the middle of that paragraph,

14   they state here Cassarino's own conduct has

15   eliminated any reason to believe he will abide

16   by the bail conditions.

17             Now I stop there and I say okay,

18   something's coming.  They're going to tell me

19   about all these things that he has done

20   outside the four corners of the indictment

21   because if you only look at the allegations of

22   the indictment -- and this case is like any

23   other case, like any other defendant charged

24   with a serious crime who has been released, is

25   there something in this man's background that

Transcription Plus II          Rosalie Lombardi

1    brings to the Court's attention, that raises

2    the Court's concern and says, you know what,

3    no matter what I do with him, no matter where

4    I put him, unless it's the MDC, this man is

5    not likely to follow the directions of the

6    Court.  And they don't do that, your Honor.

7              What they do is they then follow with

8    the allegations of the indictment.  And I

9    grant, your Honor, that this is a serious case

10   and I grant, your Honor, that this is a case

11   that involves allegations of violence.  And I

12   will grant even further that I've heard some

13   of those conversations and they are troubling.

14             There are exaggerations, to be sure.

15   The government insists that there's a

16   reference to -- by Mr. Cassarino to grabbing

17   someone's mother and that being a threat to

18   kidnap.  It is not.  It is a colloquial

19   expression to go grab somebody to contact.  If

20   I say I'm going to get a hold of someone, I

21   don't literally mean grab them by the lapels.

22   I'm going to contact them.  It's an expression

23   I've heard -- in 25 years of being in this

24   profession that I have heard.

25             THE COURT:  Let me stop you at this

Transcription Plus II          Rosalie Lombardi

1   point.  First of all, the record should be

2   clear that my determination will be based upon

3   the standard of clear and convincing evidence

4   which applies to the issue of dangerousness

5   and that I will consider and comment as we go

6   along, the standards which are delineated in

7   second circuit law; namely the nature and

8   circumstances of the crime charged, the weight

9   of the evidence against the defendant, the

10  history and characteristics of the defendant,

11  including family ties, employment, community

12  ties, past conduct, and the nature and

13  seriousness of the danger to the community or

14  to an individual.

15          The nature and circumstances of the

16  crime charged --

17          MR. PORCO:  It doesn't help me.

18          THE COURT:  -- you acknowledge are --

19          MR. PORCO:  It does not help me.

20          THE COURT:  -- very, very serious.

21          MR. PORCO:  Yes.

22          THE COURT:  So that certainly weighs

23  against you.

24          MR. PORCO:  Absolutely.

25          THE COURT:  Let's talk about the

Transcription Plus II          Rosalie Lombardi

1    weight of the evidence against the defendant.

2            In many of these bail cases, I'm

3    presented with proffers by the government.

4    Many times they're based upon confidential

5    sources.  They present particular difficulties

6    because I have to satisfy myself that these

7    confidential sources are reliable and that the

8    government is not being led by the nose,

9    so-to-speak, by people who, you know, perhaps

10   should not be believable.

11           And there are procedures and processes

12   and techniques which we employ to give us the

13   requisite comfort level that that proffer is

14   something that's reliable and that I can

15   consider in the equation.

16           Here, however, I have absolute

17   evidence of direct activity on the part of the

18   defendant that is beyond what you just say

19   about the so-called colloquial expressions

20   about the mother.

21           Let me point out some of these as I

22   went through the government's submissions.  I

23   assume that these references to the tapes are

24   accurate.  If not, you'll let me know.

25           MR. PORCO:  Yes.

1        THE COURT:  But Mr. Cassarino is heard

2   saying, for example, to Bondi, that "I want

3   it" and I'll use the word, "fucking on record

4   that I gave him a beating that I hit him.  I

5   want that.  You know what I am saying."

6        And Bondi says, "Right."

7        Then there's a conversation where

8   Cassarino is talking to Tommy and he says,

9   "Bust his fucking head.  Don't worry about

10  it."

11        And when Tommy asks whether he could

12  do that, Cassarino says, "Bust his fucking

13  head.  Don't worry about it.  Crack his head.

14  If you got to fucking beef, crack his fucking

15  head."

16        And Tommy says, "No problem."

17        Primo says, "Don't worry about it."

18        Later on, there's another tape where

19  Mr. Cassarino is talking to Eddie and in the

20  course of that conversation he says things

21  such as "Listen to me, listen to me, when I

22  tell you to fucking do something, you do it.

23  I don't care if you like it or you don't

24  fucking like it."

25        And he goes on and later on he says,

1    "If you don't like it, let me know now.  I'll

2    come there and throw you through the fucking

3    window."

4            I also took note of his conversation

5    with Phil, where he says, "Listen, I am going

6    to grab your mother today."  That's what

7    you're talking about.  "Don't worry about it.

8    I'm going to grab her one way or another.  Do

9    you hear what I'm telling you?  I'm going to

10   get the fucking money today, too."

11           So, getting the money today suggests a

12   little bit of possible coercion.

13           MR. PORCO:  Coercion, your Honor, to

14   the extent that he's -- I'm sorry, I don't

15   mean to interrupt.

16           THE COURT:  But Mr. Porco --

17           MR. PORCO:  I didn't mean to interrupt

18   you.

19           THE COURT:  I'm trying to present you

20   -- I certainly respect the fact that you're

21   doing an outstanding job on behalf of your

22   client, which is your professional

23   responsibility.

24           Of course, my role is a little

25   different than yours but I am just trying to

1   give you a combination of portions of the

2   tapes that I have highlighted that I think

3   really does make a very compelling case for

4   the notion that the weight of the evidence is

5   strongly, almost interloculantly, you know,

6   compelling against the defendant and it seems

7   that he's going to have a hard time escaping

8   conviction.

9           You have, in other words, in sum, hard

10   core evidence of his guilt in this case.  And

11   that seems to dominate over everything else

12   that you argue.

13           Let's go on with the other factors;

14   the history and characteristics of the

15   defendant, including family ties, employment,

16   community ties, past conduct.

17           Well, I don't see a lot about

18   community ties that's been presented to me.

19   His past conduct, he does have some, arguably

20   minor, criminal convictions.  You've

21   referenced that they are misdemeanors.  I take

22   note of that.  The government would put a more

23   onerous spin on that but he's not lily white

24   clean.

25           And he has family ties; that appears

1    to be the case and as is often the case with

2    people who live a dichotomous lifestyle,

3    they're very supportive and they're good

4    neighbors but they still engage in criminal

5    conduct.

6            But I do credit that Mr. Cassarino

7    apparently has hard felt family commitments

8    here.  And, of course, the circumstances of

9    his daughter certainly reinforces that.  I

10   recognize that.

11           His characteristics, well, I don't

12   know as much about him now as I possibly will

13   get to know later on but it doesn't seem as if

14   he has significant employment.  There's some

15   employment that apparently he can point to but

16   I don't see where his characteristics one way

17   or the other should influence my decision, I

18   suspect.

19           And then last, the nature and

20   seriousness of the danger to the community or

21   to an individual.  Look, hopefully, it's more

22   difficult for somebody to threaten someone

23   from jail than it is from their home.

24           In the world of reality, I guess,

25   there are ways in which threats can be visited

Proceedings                    17

1    by somebody in jail or you can create a mini

2    jail scenario in somebody's home.  But the

3    second circuit cautions against creating a

4    home environment that's the equivalent of

5    detention.

6           And I think that we ought to go with

7    the assumption that it would be more difficult

8    to visit threats on somebody in jail than if

9    somebody was not in jail.

10          So, that's my take.  Now I want to

11   give you an opportunity to say what you wish

12   now that you know my sensibilities and my

13   predilections.  And I'll give Mr. Genser an

14   opportunity to speak briefly but I just tell

15   you right now that I think you're up against

16   it.

17          MR. PORCO:  I appreciate the Court

18   giving me a bird eye's view, as it were, of

19   what it's thinking as I am speaking because

20   that is the most helpful that the Court could

21   be in having me say things that are relevant,

22   as opposed to going off on a tangent that

23   don't mean anything to you.

24          THE COURT:  I think it's better that

25   way than I just I listen for a half hour and

Proceedings                    18

1   then you don't know what really is --

2          MR. PORCO:  Exactly.

3          THE COURT:  -- effecting me.

4          MR. PORCO:  If we were -- if I were

5   standing before your Honor at the time of

6   sentencing, then some of these conversations

7   that are sort of shocking would be troublesome

8   from -- just from their own nature.

9          But the focus here, your Honor, it

10  seems to me, is whether or not there is a

11  likelihood -- that's what the government has

12  to show, that there is a likelihood that if

13  you release him, he's going to continue to

14  commit crimes.

15         I can stand before you --

16         THE COURT:  I'm not so sure that

17  that's really the most apt expression of the

18  legal standard.  It's clear and convincing

19  evidence that the defendant presents a danger

20  to the community.  Yes, you can say that it

21  oculi translate into a likelihood that he is

22  going to commit a crime but that's not quite

23  the correct articulation of the standard.

24         MR. PORCO:  But that is the concern in

25  the bail -- in the detention equation, as it

Transcription Plus II          Rosalie Lombardi

Proceedings                    19

1    were.  The concern -- you are going to detain

2    him if you feel that unless you detain him, he

3    poses a danger to the community.

4           And what does that mean, a danger to

5    the community?  Right, there's a danger

6    because he has la cosa nostra label on him?

7    No, it means that you're concerned that he's

8    going to go out and whether he's within the

9    confines of his home or wherever he is, that

10   he's going to continue in his illegal conduct.

11   That's what --

12          THE COURT:  Well, no, it's just much

13   more basic than that.  At home, you know, I'm

14   not going to be there, you're not going to be

15   there, we're not going to have 24 hour a day

16   monitors to see who is going to come into the

17   premises and who is going to come and go, or

18   what family members may be coming and going

19   into the house or friends.  There's just much

20   more of an opportunity for him to do what he's

21   done, apparently, in the past.

22          MR. PORCO:  Right.

23          THE COURT:  And that's to use people

24   as a vehicle for threatening other people and

25   to put himself in the best posture to avoid

Proceedings                              20

1   conviction by threats.

2           MR. PORCO:  That's your Honor's

3   concern.  That is the --

4           THE COURT:  Well, yes.

5           MR. PORCO:  -- the ultimate concern

6   here that outside the confines of detention,

7   he's in a better position to continue those

8   crimes.

9           What I am suggesting to the Court --

10  what I have attempted to suggest to the Court

11  is this, first of all, I have raised the issue

12  of his daughter, not because we're seeking to

13  evoke sympathy of the Court -- oh, he's --

14  please give him bail, Judge, because he has a

15  daughter who is about to undergo surgery.  No,

16  that's the spin that the government puts on

17  what I say.

18          But the fact of his daughter's surgery

19  and it isn't cosmetic, it's not a tummy tuck

20  and it's not a face lift, it is the almost

21  complete reconstruction of a prepubescent

22  child's face and how that effects her overall

23  well being.

24          THE COURT:  Do you think that maybe

25  Mr. Cassarino should have thought about his

Proceedings                     21

1  daughter before he engaged in these apparent

2  criminal acts as reflected in these tapes?

3         MR. PORCO:  Well, of course he should

4  have.  Of course he should have.  He didn't.

5  To the extent that the government's tapes

6  accurately show what he said, what his words

7  were, because that's what -- really what we're

8  talking about here are the words, by the way,

9  there has -- that I know of, there has not

10  been an allegation made here that anyone at

11  any time was actually physically hurt by this

12  man.

13         THE COURT:  I'm not so sure that the

14  government needs to prove that in order to

15  obtain a conviction.

16         MR. PORCO:  I'm not suggesting that

17  they should.

18         THE COURT:  All right.  But, you know,

19  basically, I just don't -- look, I'm not

20  trying this case.  The jury's going to try

21  this case when it goes to trial but I tell you

22  right now, I can't see how he's going to avoid

23  a conviction here just based upon these tapes

24  alone.

25         Be that as it may, with all due

Proceedings                           22

1   respect, I am going to deny the application.

2   I don't think I have to repeat the findings

3   that I have made.  I think it's clear from the

4   record.  I've gone through of all these

5   factors.

6          But I just wanted to, as a courtesy to

7   you, explain to you my rationale and thinking

8   so that you know that I've given this very

9   serious consideration.

10          I do sympathize with the fact that

11   Mr. Cassarino's daughter has these problems

12   but I can't let that override all of these

13   other factors.

14          MR. PORCO:  Your Honor, if I -- you

15   have ruled and that's that but I just wanted

16   to, at least for the benefit of the

17   defendant's family --

18          THE COURT:  By all means.

19          MR. PORCO:  -- I would like to put the

20   factor of the circumstance of his daughter's

21   surgery in the proper context.

22          The reason why it's important for

23   Mr. Cassarino to be with his daughter -- it is

24   not for Mr. Cassarino's benefit, it is for the

25   daughter's benefit.  It is for the daughter's

Proceedings                    23

1   well being.

2          I can say this to your Honor, that

3   Mr. Cassarino said to me that he wants to be

4   out, so that he could be with his daughter.

5   But for that, he can stay where he is.

6          THE COURT:  Well, but his --

7          MR. PORCO:  So, it's for his

8   daughter's sake.

9          THE COURT:  I know.

10          MR. PORCO:  Not for him.  I even

11   offered to the government, I said, we will put

12   together a bail package and we will have it

13   for a limited duration on a given date, long

14   before trial, long before this certain --

15          THE COURT:  When does she --

16          MR. PORCO:  -- we'll come back.

17          THE COURT:  She's going in for surgery

18   when?  Next week?

19          MR. PORCO:  Monday.

20          THE COURT:  Let me ask Mr. Genser

21   this, as a -- sort of a humanitarian gesture,

22   is there a way in which we can have

23   Mr. Cassarino be there for a day or two during

24   the operation and maybe the immediate recovery

25   phase, then have him returned to jail?  I

Transcription Plus II          Rosalie Lombardi

Proceedings                    24

1    mean --

2            MR. PORCO:  He's willing to do that.

3    He is willing to do that.

4            THE COURT:  Let's think about that

5    because that really would not give him the

6    same opportunity that he would have, if I were

7    to just put him under home detention.  And it

8    might be a nice way of helping a young child

9    out, without really running much of a risk or

10   danger or exposure.

11           I might be inclined to try to find a

12   vehicle for doing that.  Maybe we're talking

13   about two days or three days and then he'll

14   have to come back to jail.  I just don't see

15   where that's a real problem.

16           But I -- you know, what do you say

17   about that?

18           MR. GENSER:  Judge, it's something

19   that I thought about that it might be

20   suggested and proposed.  You know, it's tough

21   because on its face it sounds -- it has the

22   surface appeal of sort of some type of a

23   reasonable effort to do something for this

24   young girl that we're all concerned about.

25           But I have to say that the government

**Proceedings** 25

1   would oppose it.  It's not a good idea.

2   There's a record here of dangerousness.

3           THE COURT:  Well --

4           MR. GENSER:  The Court has so found --

5           THE COURT:  Well, I am talking about a

6   very limited period of freedom for a very

7   focused purpose and in that respect,

8   highlighting the concept of family ties with

9   -- and family circumstances, which is a factor

10  that I should consider.  And it may well be in

11  this case that I'm not going to allow that

12  factor to keep him out of prison for an

13  extended period of time but it may well be a

14  nice balance to strike to give him a couple of

15  days.

16          What are you talking about, two or

17  three days?

18          MR. PORCO:  Well, your Honor's talking

19  about a couple of days.  I originally was

20  thinking a little longer but --

21          THE COURT:  Well, look, I --

22          MR. PORCO:  Whatever -- I am in no

23  position to argue that.

24          MR. GENSER:  Well, Judge, this is

25  really the government's concern that once

1    your Honor takes -- if your Honor chooses to

2    take that step, it then becomes a slippery

3    slope and we have --

4              THE COURT:  I'm not going to allow a

5    slippery slope.

6              MR. GENSER:   -- the defendant coming

7    back --

8              MR. PORCO:  Whatever your Honor

9    ultimately says, I would ask give me a couple

10   of weeks.

11             THE COURT:  She's going in --

12             MR. PORCO:  You say I am only going to

13   give you a couple of days.  Then a couple of

14   days, it is.  There will be no applications

15   for extensions, except if, God forbid, there

16   were to be some complication with the child,

17   which no one foresees, okay?

18             THE COURT:  You have all these

19   sureties in place today.

20             MR. PORCO:  I have all sureties in

21   place.

22             THE COURT:  You've confirmed that.

23   The sureties are all in place?

24             MS. VASQUEZ:  I'm sorry, your Honor.

25             THE COURT:  The sureties are all in

1   place today?

2          MS. VASQUEZ:  Yes, I believe there's

3   one that maybe has to come back.

4          THE COURT:  So, I don't want to have

5   to, you know, micro manage all of this but if

6   those sureties are in place, what I will do is

7   I will let him out for one week starting --

8   well, he'll be at the surgery, I guess on

9   Monday.

10          MR. PORCO:  Yes.

11          THE COURT:  He'll be there, I guess,

12   during the recovery phase.

13          MR. PORCO:  Yes.

14          THE COURT:  And then the following

15   week, he'll have to return to jail.

16          MR. PORCO:  He'll surrender.

17          THE COURT:  The sureties will be in

18   place, so that they will know for sure that if

19   he doesn't abide by the one week terms and

20   conditions that I am going to impose, that

21   they are at risk to lose their assets.

22          And I do think, Mr. Genser, that --

23   I'm not terribly concerned about his one week

24   out of jail under these circumstances and we

25   try to strike a balance.

Transcription Plus II          Rosalie Lombardi

Proceedings                    28

1          MR. PORCO:  Thank you, Judge.

2          MR. GENSER:  Judge, I understand your

3   Honor's trying to strike a balance and I

4   respect that but it's my job to just put on

5   the record --

6          THE COURT:  Yes.

7          MR. GENSER:  -- the government's

8   position on it.  Our position is it's a bad

9   idea.  It doesn't -- it follows once the Court

10  has found that he's a danger and that these

11  conditions can't assure the safety of the

12  community, that he has to be in jail

13  notwithstanding this situation, which we all

14  agree is sad.

15          I think your Honor hit the nail on the

16  head.  He should have thought about this

17  before.

18          THE COURT:  I agree with all of that

19  but, you know, once again, I think I've

20  expressed my sentiments on it.

21          Look, you have all these sureties, for

22  one.  It's $1 million just to cover one week.

23  He'll be under home detention.  His phone will

24  be monitored and you'll have the opportunity

25  to check on him whenever you chose to do so

Transcription Plus II          Rosalie Lombardi

Proceedings                              29

1    during the course of the week.  We'll consent

2    to any reasonable search conditions.

3            MR. GENSER:  Judge, since it's only

4    for a week, the government would suggest or

5    propose that your Honor include as a condition

6    a 24 hour guard at the defendant's expense to

7    watch him.

8            THE COURT:  Who would you propose?

9            MR. GENSER:  Oh, there are security --

10           THE COURT:  I'm not available next

11   week.  I'm going on vacation.

12           MR. GENSER:  Neither am I but there

13   are security services that can be retained for

14   this type of situation and I think that --

15           THE COURT:  And to monitor who comes

16   and goes?

17           MR. GENSER:  -- in light of the

18   findings of dangerousness, it's a precaution

19   that would be wise here.  And to accompany

20   Mr. Cassarino, if he's going to -- presumably,

21   the whole point of this is so that he can go

22   the hospital to be with his daughter.

23           THE COURT:  It's not a bad idea.  You

24   know, I'm not a maven on bail matters because,

25   you know, the magistrate judges, quite

Proceedings                    30

1   frankly, are faced with many more combination

2   of circumstances than I am in the course of my

3   business.  So, I just try to think these

4   things through in a reasonable way.

5           What do you think about that?

6           MR. PORCO:  It hits me by surprise.  I

7   hadn't considered that but as I said earlier,

8   Judge, we're in no position to argue with

9   almost any condition that the Court would seek

10  to impose.

11          THE COURT:  Then why don't we --

12          MR. PORCO:  I --

13          THE COURT:  Can you get somebody for a

14  week?  I mean --

15          MR. GENSER:  Absolutely, that can be

16  done, your Honor.

17          THE COURT:  All right.  So, why don't

18  we do that?  The defendant will pay and then I

19  don't -- and then we'll have on top of that,

20  do you need any other protection here, if you

21  have the security guard?  He obviously is not

22  to associate with known criminals.  The only

23  people who will be allowed to come into his

24  home would be the family who lives there.

25          And the only reason why he would be

Proceedings                              31

1   able to leave the home will be to go to visit

2   his daughter in the hospital and that's it.

3            MR. GENSER:  Judge, for the record, I

4   do have to say that even those conditions, the

5   government feels are inadequate but we

6   appreciate your Honor's imposing them.

7            THE COURT:  We'll do that then.

8            And are the suretors here?

9            MR. PORCO:  They're here.

10           THE COURT:  Is there anything else you

11  wish to say?  I mean --

12           MR. PORCO:  I was going to ask the

13  Court -- well, I thought better of asking

14  your Honor.  I'll ask your staff, the

15  mechanics of doing this.  If we sign the bond,

16  would the defendant be entitled to released or

17  now that the government imposed that other

18  condition, we would have to --

19           THE COURT:  He's not going to be

20  entitled to release --

21           MR. PORCO:  Until --

22           THE COURT:  -- until he's needed at

23  the hospital.

24           MR. PORCO:  All right.  That was the

25  only question I had.

Transcription Plus II        Rosalie Lombardi

Proceedings                      32

1          THE COURT:  That's Monday morning and

2     he's to return the following Monday.

3          MR. PORCO:  So, Monday is the --

4          THE CLERK:  15th.

5          MR. PORCO:  -- 15th to 22nd.

6          THE COURT:  Yes.

7          MR. PORCO:  So then I have between

8     today and Monday morning to secure the

9     services of --

10          THE COURT:  Of a -- yes, of a proper

11     security guard to be paid for at

12     Mr. Cassarino's expense and that person is to

13     be available to report to Mr. Genser and to

14     the government on a -- as Mr. Genser requires.

15          MR. PORCO:  Very well, Judge.

16          THE COURT:  I know it's, you know --

17     and there's a lot out here but I am trying to

18     accommodate the daughter here.

19          MR. PORCO:  I know you are.

20          MR. GENSER:  Judge, I just hope the

21     record is clear that the Court will not

22     entertain any further applications for

23     extensions or changes or modifications to

24     this.  The government strenuously opposes that

25     type of a thing.

Transcription Plus II          Rosalie Lombardi

Proceedings                                    33

1          THE COURT:  Well, I mean, I don't --

2          MR. GENSER:  I just hope that we're

3     all on the same page with it.

4          THE COURT:  I don't anticipate

5     anything but who knows what --

6          MR. PORCO:  I made a representation to

7     the Court that we have no intentions of

8     seeking extensions.

9          THE COURT:  It seems like this is a

10    heartfelt representation and certainly, I

11    think I'm clear in terms of what I am doing

12    here and as far as the future is concerned,

13    none of know --

14         MR. GENSER:  Judge, I just also want

15    the Court to make -- make sure the Court's

16    aware of the proffer that we made in the brief

17    about Mr. Cassarino's conduct, which has not

18    been consistent with, you know, a true family

19    man.

20         THE COURT:  Mr. Genser, all of your

21    arguments are well stated and are noted by the

22    Court but I think the record reflects, you

23    know, the balance that I'm trying to strike

24    here.

25         MR. PORCO:  Thank you very much,

Proceedings                                    34

1    Judge.  I appreciate it.

2            THE COURT:  All right.  And I hope

3    that, quite frankly, even though I can't say

4    that I am a fan of Mr. Cassarino's based upon

5    what I've read, I do hope his daughter is

6    successful with her operation.

7            MR. PORCO:  Thank you very much,

8    Judge.

9            THE COURT:  And by the way, we need

10   the suretors to come forward.

11           THE CLERK:  I'm sorry, your Honor?

12           THE COURT:  We need the suretors to

13   come forward.

14           MR. GENSER:  Judge?

15           THE COURT:  Yes.

16           MR. GENSER:  As I am standing here, I

17   would also propose an additional condition.

18           THE COURT:  You see, a lot of times we

19   think of these after thoughts.

20           MR. GENSER:  Yes.

21           THE COURT:  Yes.

22           MR. GENSER:  That Mr. Cassarino, while

23   he's out for this week, that he be forbidden

24   from suing any telephones, given that so many

25   of his threats were executed through the

Proceedings                    35

1   telephone.  He shouldn't use the home phone.

2              MR. PORCO:  Not a problem.

3              MR. GENSER:  And he shouldn't use --

4              THE COURT:  Okay.

5              MR. PORCO:  Not a problem.

6              THE COURT:  Agreed.  I think we got it

7   all down.

8              MR. GENSER:  -- cell phones.

9              THE COURT:  Now, Mr. Innelli, the

10  Court's wonderful clerk is feverishly writing

11  away here.  Hopefully, I'm sure he's got it

12  right.

13             But at this time, we want the suretors

14  to step forward and identify themselves and

15  tell me what the security is that they have

16  offered.  Ms. Vasquez, you double check this

17  as we go along.  And then I'll talk to each of

18  you after you identify yourself.

19             The first person?

20             THE CLERK:  Please state and spell

21  your name for the record.

22             MR. PORCO:  State your name.

23             MR. CASSARINO:  Angelo Cassarino.

24             THE COURT:  Follow Mr. Innelli's

25  directions.  He's going to swear you in and

Proceedings                                    36

1    he's going to ask you some questions.

2              MS. VASQUEZ:  First name?

3              MR. CASSARINO:  Angelo.

4              MS. VASQUEZ:  What's your name?

5              MR. CASSARINO:  Angelo Cassarino.

6    A N G E L O   C A S S A R I N O ,

7         called as a suretor, having been first duly

8         sworn, was examined and testified as

9         follows:

10             THE COURT:  Tell us, Ms. Vasquez, what

11   is the security that this gentleman has

12   offered?

13             MS. VASQUEZ:  I believe it's a $50,000

14   -- is that a CD account; right?  I have copies

15   of it.  It's okay.  I have copies of it.  With

16   Northfield Savings Bank?

17             MR. CASSARINO:  That's account.

18             THE COURT:  That's -- you've confirmed

19   that, there's a $50,000 CD that he's put up;

20   right?

21             MR. CASSARINO:  Yes.

22             THE COURT:  Okay.

23             Next person?  Just stay here for a few

24   moments.  Step aside but stay here.

25             Go ahead.

Proceedings                                    37

1   D O R E E N   C A S S A R I N O ,

2        called as a suretor, having been first duly

3        sworn, was examined and testified as

4        follows:

5             THE CLERK:  Please state and spell

6   your name for the record.

7             MS. CASSARINO:  Doreen Cassarino.

8             THE COURT:  Ms. Cassarino, what

9   security have you put up.

10            MS. CASSARINO:  Salary.

11            THE COURT:  I'm sorry?

12            MS. CASSARINO:  My salary.

13            THE COURT:  Your salary.

14            MS. CASSARINO:  Yes.

15            THE COURT:  And anything else?

16            MS. CASSARINO:  No.

17            THE COURT:  And tell me what that

18  salary is?

19            MS. CASSARINO:  $25,000.

20            THE COURT:  And you work for whom?

21            MS. CASSARINO:  Excuse me?

22            THE COURT:  Who do you work for?

23            MS. CASSARINO:  The Jewish Board of

24  Family Children Services.

25            THE COURT:  The Jewish Board, it can't

Transcription Plus II          Rosalie Lombardi

1   be so bad then.

2           Is that true, Ms. Vasquez?  You're

3   satisfied with that?

4           MS. VASQUEZ:  That's correct.

5           THE COURT:  All right.  Stay here.

6   And let me speak to the next person.

7           THE CLERK:  I ask if you could just

8   state your name for the record.

9           MR. CASTELLANO:  Louis Castellano.

10  L O U I S   C A S T E L L A N O ,

11      called as a suretor, having been first duly

12      sworn, was examined and testified as

13      follows:

14          THE COURT:  Mr. Castellano, tell me

15  the security that you are willing to put up

16  here?

17          MR. CASTELLANO:  I can't hear too

18  good.

19          THE COURT:  All right.  Do you want me

20  to yell -- I don't like to yell at people but

21  if you want me to, what security have you put

22  up?

23          MR. CASTELLANO:  A house.

24          THE COURT:  And tell me a little bit

25  about that.  What is the equity in that house?

Proceedings                         39

1    How much is it worth?

2            MR. PORCO:  Do you have a mortgage?

3            MR. CASTELLANO:  Yes.

4            MR. PORCO:  How much of a mortgage?

5            MR. CASTELLANO:  About $160,000.

6            MR. PORCO:  How much do you think the

7    house is worth?

8            MR. CASTELLANO:  About $900,000.

9            MR. PORCO:  We believe we have equity

10   of about $800,000.

11           THE COURT:  All right.  And

12   Ms. Vasquez, are you satisfied with that from

13   your investigations?

14           MS. VASQUEZ:  We have a copy of the

15   deed but we do not have an appraisal.

16           THE COURT:  Where is the house?

17           MS. VASQUEZ:  It's in Carroll Gardens

18   in Brooklyn.

19           THE COURT:  Well, we know that Carroll

20   Gardens in Brooklyn --

21           MR. PORCO:  It's a three family,

22   your Honor.

23           THE COURT:  It's a three family house?

24           MR. PORCO:  Yes.

25           THE COURT:  It sounds like it's worth

Proceedings                          40

1    certainly much more than the mortgage.

2              MR. PORCO:  Yes.

3              THE COURT:  Thank you very much.  Just

4    stay here.  Let me speak to the next person.

5    C A M I L L A   R I V I E C C I O, ,

6         called as a suretor, having been first duly

7         sworn, was examined and testified as

8         follows:

9              THE CLERK:  Can I ask you to please

10   state your name for the record.

11             MS. RIVIECCIO:  Camilla Rivieccio.

12             THE COURT:  Tell me your security that

13   you are willing to put up?

14             MS. RIVIECCIO:  A $25,000 savings

15   account.

16             THE COURT:  A savings account.

17             MS. RIVIECCIO:  Yes.

18             THE COURT:  And?

19             MS. RIVIECCIO:  And also, a retirement

20   plan.

21             THE COURT:  There's plenty of

22   security.

23             Ms. Vasquez, do you acknowledge that

24   you're satisfied with that?

25             MS. VASQUEZ:  Yes.

Proceedings                    41

1           THE COURT:  Thank you very much.

2           And the next?

3           THE CLERK:  Please state your name for

4   the record. Could you spell it, too.

5   L I S A   R I V I E C C I O ,

6       called as a suretor, having been first duly

7       sworn, was examined and testified as

8       follows:

9           MS. L. RIVIECCIO:  Lisa Rivieccio.

10  It's R-i-v-i-e-c-c-i-o.

11          THE COURT:  And tell me the security

12  that you're willing to forgo, should

13  Mr. Cassarino not comply with his conditions

14  of release.

15          MS. L. RIVIECCIO:  My salary.

16          THE COURT:  Your salary and how much

17  is that?

18          MS. L. RIVIECCIO:  It's around

19  $42,000.

20          THE COURT:  And who is your employer?

21          MS. L. RIVIECCIO:  Bernum, Wise &

22  Tobacco (phonetic).

23          THE COURT:  All right.  And you've

24  confirmed that, Ms. Vasquez, as well?

25          MS. VASQUEZ:  Yes.

Proceedings                    42

1          THE COURT:  All right.  We have one

2     last person.  Just wait here.

3     A N T O I N E T T E   C A S S A R I N O ,

4          called as a suretor, having been first duly

5          sworn, was examined and testified as

6          follows:

7               THE CLERK:  Please state your name.

8               MS. CASSARINO:  Antoinette Cassarino.

9               THE CLERK:  Okay.

10               THE COURT:  All right.  And what are

11     you willing to forgo if Mr. Cassarino doesn't

12     comply with his terms of release.

13               MS. CASSARINO:  My house.

14               THE COURT:  Your house?

15               MS. CASSARINO:  My house.

16               THE COURT:  Tell me a little bit about

17     that; the mortgage and what you think the

18     equity is.

19               MS. CASSARINO:  It's -- last year it

20     was appraised at $425,000.  We owe, I think,

21     $308.

22               THE COURT:  So, about $100,000 equity.

23     Does that square with your information,

24     Ms. Vasquez?

25               MS. VASQUEZ:  Yes, it does.

Proceedings                    43

1          THE COURT:  All right.

2          Now, folks, let me just tell you --

3    all of you collectively, this.  You probably

4    realize what I am about to say but if

5    Mr. Cassarino does not comply with these

6    conditions of release, even though it's only

7    one week, that you each will be jointly and

8    severally liable for the bail that's being

9    imposed here.

10         And I guess I should set bail here and

11   I'm setting it at $1 million.

12         And Mr. Cassarino, I am sure realizes

13   that if he doesn't comply with the Court's

14   orders that he's going to jeopardize all of

15   the security that you have just articulated

16   before me.

17         Are you all willing to do this, to be

18   jointly and severally responsible up to $1

19   million with the security that you have to

20   secure that bond?  Yes?  Do I hear everybody

21   say yes?

22         THE SURETORS:  Yes.

23         THE COURT:  All right.  Just so that

24   you realize what's happening here and the

25   seriousness of this proceeding.  I know it's a

Proceedings                    44

1  difficult time for your family and everybody

2  else, but nonetheless, I made my

3  determinations and we're going to abide by

4  that, all of us; okay?

5          MR. GENSER:  Judge, if we could just

6  go over the conditions one last time.

7          THE COURT:  I think we have them.

8  Let's see what Mr. Innelli has written down.

9          THE CLERK:  Okay.

10         THE COURT:  There's no telephone.

11         MR. GENSER:  Well, it's home

12 confinement subject to electronic monitoring.

13         THE CLERK:  With 24 hour guard and to

14 pay for the electronic monitoring and to pay

15 for the guard.  His consent to searches, no

16 phones, cell phones or any other kind of

17 phone.  He's in home detention.  He's only

18 allowed to leave to visit his daughter at the

19 hospital.  He's not to associate with any

20 known criminals.  Only family members living

21 in the home are allowed to be at the home.

22         And that's all I have.

23         THE COURT:  I think that's sufficient

24 but if there's going to be a 24 hour guard, do

25 we need to have electronic monitoring on top

Transcription Plus II          Rosalie Lombardi

1   of that?

2           MR. GENSER:  Absolutely, your Honor.

3           THE COURT:  Why?  There's going to be

4   a guard outside.

5           MR. GENSER:  Judge, it's a --

6           THE COURT:  Do you mean may fall

7   asleep --

8           MR. GENSER:  The measures are

9   necessary.  This has been done in other cases.

10          THE COURT:  All right.

11          MR. GENSER:  The guard --

12          THE COURT:  We'll do it.

13          MR. GENSER:  -- is a supplement to the

14  electronic monitoring.

15          THE COURT:  We'll let it go then.

16          MR. GENSER:  We would also ask that

17  there be no contact with anyone that's been

18  heard on any tapes or that he believes to be a

19  victim in the case.

20          THE COURT:  We just said he only is to

21  have --

22          MR. PORCO:  There's no phones.

23          THE COURT:  There's no phones and he's

24  only --

25          MR. PORCO:  Well, he might be able to

Transcription Plus II          Rosalie Lombardi

Proceedings                          46

1    do it by e-mail.

2            MR. GENSER:  I'm just reading this

3    note.

4            THE COURT:  Let's not get --

5            MR. GENSER:  One last thing, Judge, if

6    I can.  One last request.

7            THE COURT:  Yes, no e-mail.

8            MR. PORCO:  No e-mail.

9            MR. GENSER:  That the government --

10           MR. PORCO:  And no pigeons.

11           THE COURT:  He's not to have contact

12   by -- let me just say --

13           MR. GENSER:  Yes.

14           THE COURT:  He's not to have contact

15   with nobody except his immediate family.  I

16   assume he's not going to threaten them.  And

17   he's not to visit any threats, of course, even

18   through his immediate family.

19           I think we're clear about it.  I

20   really don't think we're going to have any

21   problems here under the circumstances of this

22   case.

23           MR. PORCO:  That's right.  You're not.

24           THE COURT:  Okay?

25           MR. GENSER:  Just one last request

Transcription Plus II            Rosalie Lombardi

1  that the government have a chance to find out

2  who the security guard is going to be, what

3  service is going to provide it and have a

4  chance to give its approval on that.  So that

5  we can have some confidence that it's going to

6  be a neutral --

7          THE COURT:  Well --

8          MR. PORCO:  I was going to ask

9  Mr. Genser to give me the name or names --

10          MR. GENSER:  I will suggest some,

11  actually.

12          THE COURT:  I have confidence that

13  distinguished counsel will be able to find an

14  appropriate security guard to go with the

15  electronic monitoring and everything else.

16          Enough is enough.

17          MR. GENSER:  Thank you, Judge.

18          MR. PORCO:  Now if I may just one

19  brief request, would you consider allowing

20  Mr. Cassarino to be released Sunday evening,

21  so that he could be there in the home on

22  Monday morning when his daughter goes to the

23  hospital.

24          THE COURT:  I'll do that.

25          MR. PORCO:  Very good.  Thank you very

1    much, sir.

2              THE COURT:  Okay.

3              Thank you very much for your joint

4    collective cooperation.

5              MR. GENSER:  Judge, just so I am

6    clear, what -- when does he have to return to

7    jail?

8              THE COURT:  Let's make it very

9    specific.  Monday evening, he can leave at

10   5 o'clock.

11             MR. PORCO:  Directly to here -- the

12   marshals, I guess.

13             THE COURT:  I don't know how the

14   mechanics work out.  I mean, you know -- and

15   he has to back the following Monday, I guess 9

16   in the morning.

17             MR. GENSER:  I think your Honor meant

18   to say Sunday evening he can leave.

19             THE COURT:  Sunday evening.  What did

20   I say, Monday?

21             MR. GENSER:  You said Monday.

22             THE COURT:  Sorry, Sunday, 5 o'clock,

23   return to the -- where is he, at the MDC?

24             MR. PORCO:  MDC.

25             THE COURT:  The Monday on --

Transcription Plus II          Rosalie Lombardi

Proceedings                    49

1          MR. PORCO:  The 22nd.

2          THE COURT:  The 22nd.  Let's get the

3    dates down specifically.

4          THE CLERK:  That he be -- that he's

5    allowed to leave custody as of Sunday, July 14

6    at 5 p.m. and he must return the following

7    week, which would Monday, July 22 by --

8          THE COURT:  At 9 o'clock.

9          MR. PORCO:  9 a.m.

10         THE CLERK:  9 a.m.

11         MR. PORCO:  Very well,

12         THE COURT:  Okay.  That's it.

13         MR. PORCO:  Thank you very much,

14   your Honor.

15         MR. GENSER:  Thanks, Judge.

16         THE COURT:  Thank you, Ms. Vasquez.

17              (Pause in proceedings)

18         THE COURT:  What's the problem,

19   Mr. Genser?

20         THE CLERK:  They want him to sign on

21   the record and you as apprising him of his

22   conditions of his release.

23         THE COURT:  Okay.

24         We told the suretors, you know, what

25   the terms are and we asked them specifically

Proceedings

1   whether they agreed to be bound by all of

2   those terms and conditions but the defendant,

3   I guess, should sign in open court.

4           At this time, Mr. Cassarino is here.

5   He's signing the bond.

6           Mr. Cassarino, it's $1 million that

7   you're signing your John Hancock to and you

8   understand that if you don't comply with those

9   terms and conditions of your release, that

10  you'll be personally liable for $1 million.

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  All right.  And you also

13  realize that all those good suretors who stood

14  before the Court will also be at risk

15  individually and jointly and severally, as the

16  saying goes, for the loss of their security.

17          Do you understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  All right.  Are you

20  willing to abide by all these conditions of

21  release?

22          THE DEFENDANT:  Yes, I am.

23          THE COURT:  Okay.  So, sign the bond

24  now in the Court's presence.

25          MR. PORCO:  Your Honor, while the

Proceedings                              51

1   defendant is doing that, again, this is very

2   new to me in terms of being able to deal with

3   this brief release, I believe that the order

4   states that a condition is only members of the

5   family who actually live in Mr. Cassarino's

6   house but he has his mother and father, one of

7   whom were his sureties, who are the

8   grandchildren -- the grandparents of the

9   child, I don't see any --

10          THE COURT:  I assume

11          MR. PORCO:  -- harm in having family

12  members who want to come and visit the child

13  after surgery, you know, present a problem for

14  anyone.

15          THE COURT:  Well, I assumed that these

16  folks lived in that house.

17          MR. PORCO:  Well, his parent --

18  Mr. Cassarino's parents do not.

19          THE COURT:  So, his parents can come

20  to visit.  That's what you're requesting and

21  his grandparents.

22          MR. PORCO:  Yes.

23          THE COURT:  All right.

24          MR. PORCO:  The child --

25          THE COURT:  The parents and

1    grandparents.

2              You see what happens is that we always

3    think.  Tonight you'll be dreaming, you'll

4    think of other things.  Mr. Genser will think

5    of other things.  He's going to call up

6    tomorrow in a panic.

7              But I think it's sufficient.  We've

8    gone far enough.  I just cannot fathom there's

9    going to be any problem here whatsoever.

10             MR. PORCO:  I agree with you, Judge.

11             THE COURT:  So grandparents and

12   parents.

13             MR. PORCO:  Right.  The defendant has

14   asked me also if your Honor would consider

15   allowing him to return on Friday instead of

16   Monday.  He would be willing to come in Friday

17   of next week if you let him -- if he can be

18   released today.

19             THE COURT:  No.

20             MR. PORCO:  He will come back on

21   Friday.

22             MR. GENSER:  Judge, I have to object

23   to all of this.

24             THE COURT:  No, I'll tell you, if I

25   get one more request, I'm going to revoke

1    everything.

2            MR. PORCO:  No, we don't want to do

3    that.

4            THE COURT:  I've gone as far as I can

5    go period.  I mean I spent time, you know,

6    being very particular about this and don't ask

7    me anything else.

8            MR. PORCO:  Thank you.

9            MR. GENSER:  Judge, I just want to put

10   on the record that Mr. Porco has agreed to get

11   the confessions of judgment filed by Friday,

12   which is perfectly reasonable.

13           THE COURT:  Is the confessions of

14   judgment part of the security here?

15           MS. VASQUEZ:  I believe so.  There was

16   one gentleman who had the home in Carroll

17   Gardens.

18           MR. GENSER:  If you're going to post

19   property, you have to file a confession of

20   judgment in order for it to actually be

21   posted.

22           THE COURT:  I asked you whether the

23   security was in place.  You said yes.  I took

24   your word for it.

25           MS. VASQUEZ:  I'm sorry, your Honor.

Proceedings                              54

1          THE COURT:  I took your word for it.

2    You've never been known to say anything

3    incorrect to me.  So, I am sure that

4    everything is in order as you represented it.

5    Okay?

6          MR. PORCO:  That's it.

7          THE COURT:  All right.  That's it.

8          MR. PORCO:  Thank you very much,

9    your Honor.

10               (Matter concluded)

11                    -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

55

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this __1st__ day of __October__, 2002.

_Rosalie Lombardi_

- - - - - - - - - - - - - - - - - - - - - - -

Rosalie Lombardi
Transcription Plus II

Transcription Plus II          Rosalie Lombardi